**Ocania CHALK, Plaintiff,**

v.

**SECRETARY OF LABOR, Defendant.**

Civ. A. No. 74–1897.

United States District Court,
District of Columbia.

Jan. 6, 1976.

David Rein, Washington, D. C., for plaintiff.

Ann DuRoss, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

GESELL, District Judge.

In his complaint filed December 31, 1974, Mr. Chalk, a black employed at the Department of Labor, seeks mandatory relief and damages alleging that after being detailed to the Office of Information, Publications and Reports of the Department (OIPR) he was discriminatorily refused appointment as a writer/editor in favor of a white despite the fact that his work was satisfactory and that he was qualified for the position. Mr. Chalk's claims of racial discrimination were unsuccessful up through administrative levels and judicial review is now sought. After reviewing the administrative record and hearing the parties on defend-ant's motion to dismiss and plaintiff's motion for summary judgment, the Court, by Memorandum and Order filed July 18, 1975, directed that the record be supplemented. Depositions were taken by plaintiff, further factual information was supplied by defendant, and the matter is again before the Court for decision on cross-motions for summary judgment which have been fully briefed and argued.

The Court finds that Mr. Chalk was detailed to OIPR from the Bureau of Labor Statistics (BLS) over a two and one-half month period. He was eager and ambitious, but lacked the technical competence to turn out fast news copy under deadline conditions. He was, however, performing well at a GS–4 level and being encouraged by OIPR. A vacancy for a writer/editor existed and there was a strong possibility that he would be given a chance at the work, even though greater skill than Chalk had at the moment was desired.

There were no black writer/editors in OIPR at the moment. The unit recognized the need to take affirmative action as to blacks. The unit was also in need of experienced help because it had lost a top editor of long experience. Mr. Chalk learned from Mr. Smyth that OIPR had taken on a GS–9 woman who became available through a reduction in force. At about the same time plaintiff was reminded by Mr. Smyth of OIPR that his detail would soon terminate unless something could be worked out to create a slot by personnel action freeing BLS funds for him. Mr. Chalk felt these acts constituted racial discrimination against him and "stormed" out of the job, taking several days unauthorized leave at a time he was needed. Following this episode, all efforts to transfer Mr. Chalk from BLS to OIPR ceased. This decision was also made by Mr. Smyth who was no longer willing to consider Mr. Chalk because his behavior appeared to confirm doubts about his stability which had been indicated in his personnel files. Mr. Chalk felt he had been misled by false hopes being held out, while Mr. Smyth felt let down after he had taken what he understandably believed were ex-

tra special efforts to give Mr. Chalk a break.

 If Mr. Chalk were not a black this would be just another personnel squabble. Since he is black, the Court must determine whether anything that occurred was motivated by racial prejudice. The record fails to establish that Mr. Chalk's race was a factor in what occurred and any presumption arising from the then-temporary absence of black writer/editors in OIPR is rebutted. The key issue is one of intent and no intent to discriminate can be found on this record. The Court reaches this conclusion primarily because of Mr. Smyth's overall experience and conduct in dealing with racial matters, to wit: (1) Mr. Smyth, a white, is married to a black, has four black children, and is personally and acutely aware of frustrations which confront blacks; (2) Mr. Smyth has supported the affirmative action program at OIPR, has hired blacks for editorial work both before and after this episode, and has generally been active in seeking practical ways to encourage and assist black advancement in Government service; (3) Mr. Smyth originally sought out Mr. Chalk and attempted to work him into the OIPR program; and (4) Mr. Smyth, in Mr. Chalk's own words, was foremost in offering Mr. Chalk assistance.

Overall, the Department of Labor's handling of this personnel matter has been clumsy. Mr. Chalk received inadequate counselling when his difficulty arose. In the course of the law suit counsel raised arguments addressed to Mr. Chalk's marginal qualifications and the alleged minority status of a GS-9 woman who was hired. These arguments were misplaced and served only to confuse the issue. Mr. Chalk lost out simply because he proved difficult to work with. To be sure, his qualifications were minimum in the sense he could not possibly have filled the GS-9 job, but this was never contemplated. The decision to abandon further efforts to work Mr. Chalk into this particular office in a lesser position resulted from his conduct, not his race. It may well be that Mr. Chalk is unable to work harmoniously with others but he needs further frank appraisal by competent personnel experts and hopefully if his blow-up with Mr. Smyth proves to have been an isolated instance another chance somewhere in the Department can be afforded him in due course.

The procedure followed in this case adhered to that contemplated under *Hackley v. Johnson*, 360 F.Supp. 1247 (D.D.C.1973). Counsel were aware of the decision in *Hackley v. Roudebush*, 171 U.S.App.D.C. 376, 520 F.2d 108 (1975), reversing *Hackley*, but desired not to await further appellate developments. In any event, the subsequent depositions covered all matters that would have been presented by plaintiff on a trial *de novo*.

Defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

SO ORDERED.