**Ocania CHALK, Appellant,**

v.

**SECRETARY OF LABOR, U. S. DEPARTMENT OF LABOR, et al.**

**No. 76–1251.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 6, 1977.

Decided Oct. 27, 1977.

David Rein, Washington, D.C., for appellant.

Neil A. Kaplan, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry and Ann S. DuRoss, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before TAMM and MacKINNON, Circuit Judges, and OLIVER GASCH,* United States District Judge for the United States District Court for the District of Columbia.

Opinion for the Court filed by GASCH, District Judge.

GASCH, District Judge.

Plaintiff-appellant, Mr. Ocania Chalk, a black employee of the Bureau of Labor Statistics (BLS) of the Department of Labor initiated this action on December 31, 1974, on the ground that the Office of Information, Publications and Reports (OIPR) of the Department of Labor had not hired him for a writer/editor position because of his race. Appellee then moved for summary judgment based on the administrative record. On July 18, 1975, the District Court denied the motion, noting that the record established a prima facie case of discrimination which the agency had not adequately rebutted, and directed the parties to supplement the administrative record. After submission of this additional information, both parties filed cross-motions for summary judgment, and on January 6, 1976, the Court granted summary judgment for the appellee. *Chalk v. Secretary of Labor*, 414 F.Supp. 688, 690 (D.D.C.1976). Appellant now seeks reversal of the judgment below with directions to enter summary judgment in his behalf.

## BACKGROUND

Appellant worked as an editorial clerk in the BLS at the GS–3 and GS–4 levels. In June 1973, because of a vacancy created by the retirement of a GS–13 writer, appellant was temporarily detailed to OIPR with the possibility of filling that vacancy or any subsequent vacancies. At that time OIPR employed no black writer or editor, but it sought to take affirmative action as to blacks.

While the appellant was on the detail, his Division Chief, Mr. Donald Smyth, learned of a GS–9, Mrs. Mary Delores Martinez Board, who was available because of a re-

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

duction-in-force in her section. Mr. Smyth decided to hire her for the vacant position. Mr. Smyth informed Mr. Chalk's supervisor, Mr. Morton, of the decision, and the latter indicated he would try to arrange for appellant to remain with the OIPR. On August 16, 1973, Mr. Smyth informed the appellant that Mrs. Board had been hired and reminded him that his detail to OIPR would soon end. Mr. Chalk became angry, accused Mr. Smyth of treating him unfairly and misleading him with false hopes, and left work, even though it was the day before a publication deadline. He never returned to work after that date. Following this incident, Mr. Smyth would no longer consider Mr. Chalk for any position because the appellant's behavior had confirmed a history of disciplinary problems reflected in his personnel file.

Appellant then filed a grievance alleging racial discrimination. The EEOC counselor attempted to conciliate the dispute by asking Mr. Smyth if he would accept a slot for Mr. Chalk from the appellant's supervisor Mr. Morton. Mr. Smyth refused. Appellant has since pursued his complaint administratively and judicially. The complaint contains three grievances which appellant asserts result from improper racial discrimination. These are: (1) hiring Mrs. Board rather than him for the existing vacancy; (2) refusing to accept a slot for him at the OIPR from Mr. Morton; and (3) refusing to hire him for subsequent writer/editor openings. The issue before this Court is whether the District Court erred in granting summary judgment on the ground that "[t]he record fails to establish that Mr. Chalk's race was a factor in what occurred . . ." *Id.* at 690.

1. In *McDonnell Douglas* the Supreme Court stated:

> Especially relevant to such a showing [of pretext] would be evidence that white employees involved in acts against petitioner of comparable seriousness . . . were nevertheless retained or rehired. . . .
>
> Other evidence that may be relevant to any showing of pretext includes facts as to the petitioner's treatment of respondent during his prior term of employment; petitioner's

## MERITS

In *Hackley v. Roudebush*, 171 U.S. App.D.C. 376, 520 F.2d 108 (1975), this Court stated:

> [I]n analyzing whether a case is one meet for summary judgment treatment, the relevant legal standards under Title VII must be recalled; such standards will affect whether a disputed fact is indeed "material" with respect to resolving the case.

*Id.* at 157. In a Title VII action, the initial burden of proof is on the plaintiff to establish a prima facie case of discrimination. Thereafter, it shifts to the defendant to show a legitimate, nondiscriminatory reason for its actions. The burden is then upon the plaintiff to prove that this reason is just a pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

This Court must first consider appellant's contention that the District Court erroneously applied the law by ruling that the appellee could and did rebut appellant's prima facie case by showing that there was no intent to discriminate. The absence of discriminatory intent in the rebuttal stage is not equivalent to showing a legitimate, nondiscriminatory reason as required by *McDonnell Douglas*. Intent is relevant at the next stage in determining whether the employer's stated reasons for its actions were actually pretexts for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 804–05, 93 S.Ct. 1817; *Hackley v. Roudebush*, 171 U.S.App.D.C. at 425, 520 F.2d at 157. In proving pretext, the plaintiff is not limited to proving that the employer had an intent to discriminate; he also may introduce any other evidence which illustrates that the proffered reasons were merely a smokescreen.[1] Where, however, pretext is

reaction, if any, to respondent's legitimate civil rights activities; and petitioner's general policy and practice with respect to minority employment. On the latter point, statistics as to petitioner's employment policy and practice may be helpful to a determination of whether petitioner's refusal to rehire respondent in this case conformed to a general pattern of discrimination against blacks.

411 U.S. at 804–05, 93 S.Ct. at 1825.

alleged, proof by the defendant that there was no discriminatory intent or motive would rebut the pretext charge.

In its initial decision denying the appellee's first motion for summary judgment, the District Court stated that the "administrative record establishe[d] a prima facie case not sufficiently rebutted by the agency." *Chalk v. Secretary of Labor*, C.A. No. 74–1897, at 1 (D.D.C. July 18, 1975). The Court assumed that hiring Mrs. Board instead of the appellant was justified because of her greater experience. It then found, however, that there was "no adequate explanation for why plaintiff was not reconsidered for one or more of the subsequent vacancies," and ordered the parties to supplement the record. *Id.* at 2. The Court's second decision of January 9, 1976, then found that "Mr. Smyth . . . was no longer willing to consider Mr. Chalk because his behavior appeared to confirm doubts about his stability which had been indicated in his personnel files." *Chalk v. Secretary of Labor*, 414 F.Supp. 688, 689 (D.D.C.1976). The District Court went on to state that it had to "determine whether anything that occurred was motivated by racial prejudice," and concluded that "no intent to discriminate [could] be found on this record." *Id.* at 690. In the District Court's view, "[t]he decision to abandon further efforts to work Mr. Chalk into this particular office in a lesser position resulted from his conduct, not his race." *Id.*

Reading the District Court's two decisions together indicates that it applied the proper legal standard to this action. It first found that plaintiff had set forth a prima facie case. After the record was supplemented, it then found with respect to the second and third grievances that the appellee had rebutted the plaintiff's prima facie case with a legitimate, nondiscrimina-

tory reason, *i. e.,* appellant's conduct. Only then did the Court consider the appellee's intent in concluding that the reason was not a pretext. Although the second opinion did not discuss the first grievance (hiring Mrs. Board in lieu of the appellant), the logical implication is that the Court found sub silentio the assumption it made in its first decision, that Mrs. Board's greater experience was a legitimate, nondiscriminatory reason for the appellee's action.

■ The Court not only properly applied the law, but also reached a conclusion clearly consistent with the record. The appellant erroneously states the showing a defendant must make to rebut a prima facie case of discrimination. It is not necessary to show a "legitimate business necessity" for not hiring the appellant, as he argues; rather, the defendant need only "articulate some legitimate, nondiscriminatory reason" for not doing so.[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, 93 S.Ct. at 1824.

■ With regard to the decision to hire Mrs. Board instead of the appellant to the vacant writer/editor position, the appellee states three reasons as proper justification: (1) Mrs. Board was a Mexican-American woman; (2) it eased the effect of the reduction-in-force in Mrs. Board's office; and (3) as a GS–9 she had more journalistic skill, experience, and training than the appellant. The following facts are undisputed: Mr. Chalk was only a GS–3 while Mrs. Board was a GS–9; she was the better qualified candidate; the job could have been filled at a GS–5 level; and there was a preference for filling the position with a GS–9. Regardless of the sufficiency of the first two reasons, these facts are clearly adequate to establish Mrs. Board's qualifications and are legitimate, nondiscriminatory reasons for

---

2. In only a very specific type of Title VII case must the defendant show a business necessity for its action. These are the employment test or requirement cases wherein the plaintiff challenges a standardized test or requirement for a job or promotion as discriminatory, such as occurred in *Griggs v. Duke Power Co.*, 401 U.S.

424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). In *McDonnell Douglas* the Court expressly distinguished *Griggs* and that type of case and noted that the requirements set forth in *Griggs* were inapplicable to the type of Title VII action involved in *McDonnell Douglas* and here. 411 U.S. at 805–06, 93 S.Ct. 1817.

not hiring the appellant.[3] Appellant, however, argues that the appellee may not rely on this reason because it breaches the latter's agreement that appellant would get the job if his work was satisfactory. Appellee counters that there was no such agreement. This would appear to create a genuine factual dispute, which, if material, should have precluded summary judgment below. In an affidavit filed at the administrative level, however, Mr. Chalk acknowledged that he was cautioned that it was not certain he would get the job because a reduction-in-force was in progress and some of the personnel were writers with long tenure. Appendix to Appellant's Brief at 21. Thus, even assuming the agreement, by appellant's own admission it was conditioned on the contingency that did occur, and so the appellee is still entitled to rely on that justification.

The reasons submitted by the appellee to rebut the second and third grievances (not accepting Mr. Morton's offer to create a slot for Mr. Chalk and not hiring him for later vacancies) were the appellant's abusive manner on August 16th, his walking out the day before a publication deadline, and his history of troublesome behavior, which the conduct at issue here seemed to confirm. There is no dispute that appellant was abusive, that he walked out the day before the deadline, and that his personnel file reflects a history of troublesome behavior. Furthermore, several courts have held that a decision to fire or not to hire a person because of his or her disruptive or uncooperative conduct is proper even if the conduct is not technically illegal, because it relies on a legitimate, nondiscriminatory reason. *E. g., Garrett v. Mobil Oil Corp.,*

531 F.2d 892, 895–96 (8th Cir.), *cert. denied,* 429 U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1976); *Jack v. American Linen Supply Co.,* 498 F.2d 122, 124 (5th Cir. 1974); *Gillin v. Federal Paper Bd. Co.,* 479 F.2d 97, 101 (2d Cir. 1973).

Appellant contends that his outburst on August 16th was justified and so it is not a proper reason for not hiring him. He argues that this conduct was a reasonable reaction to being rejected for a job he had been promised. As previously pointed out, appellant concedes the promise was conditional. Writers with experience were to be preferred, and Mrs. Board was in this category. Even if appellant's August 16th outburst were overlooked, this would not justify his departure from the job the day before a publication deadline and his failure to return to complete the remaining period of his detail. These latter two factors were independent, legitimate, nondiscriminatory reasons from which the Court could determine that the appellee had sustained its rebuttal burden.

There being a sufficient basis for a finding that the appellee rebutted the appellant's prima facie case with legitimate, non-discriminatory reasons, the issue becomes whether these reasons were merely pretextual. With regard to the hiring of Mrs. Board, however, appellant never submitted any evidence that her superior qualifications were only a pretext. The mere allegation that Mr. Smyth's reliance on appellant's pattern of prior misbehavior was an "afterthought" also fails to raise pretext as a material issue with respect to the subsequent refusals to hire appellant for later vacancies.[4]

---

3. In *McDonnell Douglas* the Supreme Court did not set forth what factors would constitute reasonable bases for refusing to hire someone. In *Griggs,* however, it noted that "Congress did not intend by Title VII . . . to guarantee a job to every person regardless of qualifications." 401 U.S. at 430–31, 91 S.Ct. at 853. The purpose of Title VII was to eliminate discrimination not to force management to accept less qualified or unqualified employees. *Wright v. Stone Container Corp.,* 524 F.2d 1058, 1063 (8th Cir. 1975); see *Cussler v. University of Maryland,* 430 F.Supp. 602, 606–07

(D.Md.1977) (plaintiff not discriminated against because of sex when male who was named full professor at same time she was considered had better qualifications); *Lim v. Citizens Sav. & Loan Ass'n,* 430 F.Supp. 802, 814–15 (N.D.Cal. 1976) (selection of male Caucasian instead of female Asian not discriminatory because of former's greater qualifications).

4. As the appellant stated in his brief, in his view "the real issue . . . was whether or not in light of all the circumstances, Chalk's emotional reaction to his rejection was so irra-

It being apparent that the District Court applied the proper legal standard, that there remain no material issues of fact, and that the appellee was entitled to summary judgment as a matter of law, the District Court's decision is hereby affirmed.

tional as to justify a permanent ban on his future employment at OIPR." Appellant's Brief at 31 n. 21.

Appellant also asserts that the real reason for not hiring him for the subsequent positions was that it was a reprisal for complaining of racial discrimination. No evidence was submitted to the Court below on this. Moreover, it is contradicted by his statement in his EEO complaint that "I have suffered no reprisal, intimidation or harassment as a result of this complaint." Administrative Record I, at 31.