Beatrice JONES, Plaintiff,

v.

**TRAILWAYS CORPORATION,
Defendant.**

Civ. A. No. 78–1327.

United States District Court,
District of Columbia.

Sept. 28, 1979.

Joel P. Bennett, Washington, D. C., for plaintiff.

Ira Michael Shepard, Paul Monroe Heylman, Washington, D. C., for defendant.

## MEMORANDUM OPINION

GESELL, District Judge.

Plaintiff, a black female, is presently employed as a charter sales representative in

the Washington, D. C., office of Trailways Corporation ("Trailways"). She served as Charter/Tour Manager between October 1977 and April 1978, at which time she was demoted to her current position. She claims that Trailways, in paying her and other female managers less than similarly situated males, and in demoting her from her managerial position, engaged in illegal race and sex discrimination. She unsuccessfully sought relief administratively, and now seeks from this Court reinstatement to the Charter/Tour Manager position, along with back pay and compensatory and punitive damages. The Court has jurisdiction under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f), under the Equal Pay Act of 1963, as amended, 29 U.S.C. §§ 206(d) and 216(b), and pursuant to 42 U.S.C. § 1981; it also has pendent jurisdiction over plaintiff's claim under the District of Columbia Human Rights Law, D.C.Code § 6–2201 et seq. A trial having been held, the Court now issues this Memorandum Opinion, constituting its findings of fact and conclusions of law.

Plaintiff was hired by defendant in 1974, to work as a steno-clerk in the Washington, D. C., office. She had worked previously in defendant's El Paso office from 1966–1972, where she acquired some sales experience. In Washington, she rose steadily through the ranks, serving successively as Secretary, Tour Manager, Manager for the Tour and Travel Center divisions, and, finally, in October 1977, Charter/Tour Manager. Her salary rose commensurately, from $3.90 per hour (plus cost-of-living adjustments) in March 1974, to $13,000 as Tour Manager and finally to $14,742 as Charter/Tour Manager. Her demotion, although not accompanied by a loss of pay, entailed less responsibility and diminished prospects for future advancement within Trailways. Since her demotion, plaintiff, as an inside sales representative, occupies a position equal or subordinate to employees whom she previously supervised.

The Washington, D. C., office of Trailways is one of many branch offices of this nation-wide company. In addition to conducting the usual functions of a bus termi-

nal, the office is responsible for arranging charter and tour packages for various passenger groups. These packages vary in content from the simple provision of a bus to the supplying of a bus, hotel reservations, a sightseeing itinerary and an escort. A small staff, working both by telephone and outside solicitations, is engaged in promoting defendant's charter/tour business. Despite its limited staff size, the charter/tour operation is a significant contributor to office revenues.

The Washington office is located in the company's Northeast region, which includes offices performing similar functions in Baltimore, Williamsport, Philadelphia, Pittsburgh, New York, and Boston. Plaintiff, while employed as Charter/Tour Manager, performed the same basic work as managers in other Northeast region offices. She was the only black Charter/Tour Manager employed by defendant in its Northeast region; indeed she was apparently the only black tour manager at a Trailways national conference in 1977. Many charter/tour representatives and some charter/tour managers in Trailways' Northeast region were, and are, women. Plaintiff replaced a white male as Tour Manager in January 1977, she accepted the newly created position of Charter/Tour Manager in October 1977, and she was replaced by a white male in April 1978. The Charter/Tour Manager position was held most recently by a female; it is currently vacant.

■ Plaintiff's claim, under the Equal Pay Act, that she was paid less than male Charter/Tour Managers while performing substantially equal work within the same establishment, is not supported by the proof. Defendant urges that the term "establishment" be defined in narrow terms, to include only the Washington, D. C., office of Trailways as a "physically separate place of business," 29 C.F.R. § .800.108 (1978). See Gerlach v. Michigan Bell Tel. Co., 448 F.Supp. 1168, 1172 (E.D.Mich.1978). On this view, plaintiff, whose salary increase of $508 over her male predecessor was almost twice the raise subsequently received by her

male successor, presents insufficient evidence of a pay differential.

Even accepting plaintiff's broader reading of the term "establishment" to encompass all of Trailways' charter/tour offices in the Northeast region, *see Brennan v. Goose Creek Consol. Independent School Dist.,* 519 F.2d 53, 57–58 (5th Cir. 1975), the proof remains insufficient. Plaintiff's salary, both in January 1977, as Tour Manager, and in October 1977, as Charter/Tour Manager, was greater than that of the male Charter/Tour Managers in Philadelphia and Pittsburgh. Her initial salary in the charter/tour manager's position exceeded that of the male Charter/Tour Manager hired for the Baltimore office in February 1978. Although some female managers of offices in Trailways' Northeast region were paid less than some male managers during 1977 and 1978, other female managers were at or near the top of the salary range. Plaintiff has failed to establish by a preponderance of the evidence that, either individually or as a part of a larger pattern, she was a victim of any sexually based unequal salary practices of Trailways.*

Plaintiff contends additionally, pursuant to Title VII and 42 U.S.C. § 1981, that her demotion is attributable to race discrimination by Trailways. At trial, plaintiff presented a prima facie case of race discrimination, by showing that (1) she belonged to a protected class; (2) she was employed by defendant at the managerial level and was doing apparently satisfactory work; (3) she was involuntarily demoted; and (4) she was replaced by a white person. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Capers v. Long Island R. R.,* 429 F.Supp. 1359 (S.D.N.Y.), *aff'd,* 573 F.2d 1291 (2d Cir. 1977). Defendant in opposition presented testimonial evidence that plaintiff's demotion was attributable to her office's declining charter sales figures and to deteriorating office morale. These reasons, if accepted on the proof as a whole, as

articulated by the former Area Sales Manager for Charter/Tours, would present non-discriminatory justification for the demotion and satisfy defendant's burden of coming forward under *McDonnell Douglas, supra* at 802–03.

In order to prevail under Title VII once her prima facie case has been rebutted, plaintiff must show that defendant's proffered business reasons are a pretext for an actual motive of race discrimination. *McDonnell Douglas, supra* at 804; *Chalk v. Department of Labor,* 184 U.S.App.D.C. 189, 565 F.2d 764, 766 (D.C.Cir.1977), *cert. denied,* 435 U.S. 945, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978). She has offered considerable evidence from which it may be inferred that her demotion was racially motivated. Weighing this evidence, along with the inadequacy of defendant's own explanation for its action, the Court finds that defendant's explanation is pretextual and that plaintiff has established her demotion was more likely than not a result of race discrimination. *See Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 95 S.Ct. 1127, 43 L.Ed.2d 399 (1978).

Defendant, as noted above, justifies its demotion decision on two grounds. It points first to a decline in the sales of charter packages during the final quarter of 1977 in comparison to 1976. This is highly questionable. The decline was slightly smaller during plaintiff's first three months on the job than it had been in the prior three months and was in large part attributable to other factors, especially a charter rate increase initiated by defendant's national headquarters in Dallas.

Plaintiff claims she was not informed when she took the job that any crisis situation existed regarding a need to enhance charter sales. Defendant's only evidence of such notice having been given is the word of Mr. Clark, who was then the Area Sales Manager and plaintiff's supervisor, and whose demeanor and course of dealing with plaintiff cast serious doubt on his credibili-

---

* Defendant's motion to strike plaintiff's Tables "A" through "E" is hereby granted. The tables are not evidence in this case.

ty. On this and many other matters the case presents a sharp conflict of testimony which the Court has had to resolve. The Court finds plaintiff's testimony basically credible, both here and in her account of the overall events; it finds Clark's testimony basically lacks credibility.

The Area Sales Manager, when he made the decision to demote plaintiff in late December or early January of 1978, had seen only weekly sales figures for the month of December. Moreover, plaintiff never received any counselling or warning that her sales performance was unsatisfactory during this period; indeed her supervisor commended her in writing for an "outstanding job, both sales and management wise." Memorandum, January 13, 1978; Plf.Ex. 16. During February and March of 1978, plaintiff's office substantially increased charter sales volume over the previous year, a fact which plaintiff's supervisor ignored when she was finally demoted in April.

Defendant's other explanation for demoting plaintiff, the alleged low morale of the office, is even less believable given the testimony presented at trial. Although defendant, through its former Area Sales Manager, claimed that there was internal unrest and bickering in the Washington, D.C., office, two sales representatives who worked under plaintiff testified that she was a good supervisor. No witness identified a single instance of office conflicts attributable to plaintiff's management. No documentation was produced that plaintiff played any role in a so-called deteriorating office morale, or even that morale was deteriorating; nor was there evidence presented that plaintiff was ever informed by her superiors of any morale problems. In fact, over a three-month period plaintiff was consistently praised for her performance, was rewarded with a merit increase, and was assured that her job was secure. At the same time, defendant was actively seeking her replacement through newspaper advertisements and personal solicitation of potential applicants. This means of effecting a demotion was, without question, devious and insensitive.

An employer's contention that its black employee was not qualified to perform in a managerial capacity will be closely scrutinized where, as here, the number of blacks in comparable managerial positions is negligible. *See Kinsey v. First Regional Securities, Inc.*, 181 U.S.App.D.C. 207, 557 F.2d 830, 838 (D.C.Cir.1977). When faced with an employer's reasons for its allegedly discriminatory treatment, plaintiff in a Title VII action ordinarily must rely on circumstantial rather than direct evidence from which to infer racial motivation. *Sweeney v. Board of Trustees of Keene State College*, 569 F.2d 169 (1st Cir.), *vacated on other grounds*, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Marquez v. Omaha District Sales Office*, 440 F.2d 1157, 1162 (10th Cir. 1971); *Sawyer v. Russo*, 19 EPD ¶ 8996 (D.D.C.1979). Such racially discriminatory purpose must play some part in the challenged actions, but plaintiff need not prove it played the only part or even the controlling one. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 285, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Berio v. EEOC*, 18 EPD ¶ 8847 (D.D.C.1979). *See also Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 265–66 (1977); *Miller v. Poretsky*, 595 F.2d 780, 788 (D.C.Cir.1978). A court may conclude that discriminatory intent was present if plaintiff has shown a pattern or series of actions not explainable on other grounds, *see Arlington Heights, supra* at 266; or if comparably situated white employees were treated differently from plaintiff, *McDonnell Douglas, supra* 411 U.S. at 804, 93 S.Ct. 1817, or even from the circumstances of plaintiff's treatment combined with more general evidence on defendant's relevant minority employment practices, *id.* at 804–05, 93 S.Ct. 1817.

In the instant case, plaintiff has produced substantial evidence in each of these areas. Although defendant's Area Sales Manager stated in a confidential memorandum that he would replace four sales employees of the Washington charter/tour office, he ultimately retained the two white female sales representatives while demoting plaintiff and dismissing the other black sales em-

ployee. There was testimony at trial that these same two white sales representatives (Day and Greathouse) met privately with plaintiff's supervisor and discussed plaintiff's performance during her tenure as their superior, and that a rivalry existed between one of them (Greathouse) and plaintiff. Neither sales representative would testify to having expressed private criticisms of plaintiff, but the Court found their demeanor to be less than forthcoming on this matter. Plaintiff also was demoted without individual counselling or written notice, whereas her white male successor was given several warnings by his supervisor prior to disciplinary action, a procedure which that supervisor identified as proper management.

These disparities in treatment must be viewed in the context both of plaintiff's situation as Trailways' only black tour manager in the Northeast region if not the entire country, and of defendant's less than candid behavior during the months preceding the demotion. The Court finds that over a four-month period in 1978, plaintiff was the victim of a concerted effort to force her to resign. Prior to the demotion and without notice, her supervisor openly advertised for a replacement in her position through *The Washington Post*, spread false rumors of her resignation or retirement among her own staff, other tour managers in the Northeast region, and the Dallas national office, and discussed plaintiff with white female sales representatives employed under plaintiff's supervision. Plaintiff suffered considerable anguish and humiliation during this campaign, but when she did not succumb Mr. Clark rudely proceeded to demote her on a pretextual basis. His action of confronting plaintiff with her successor without any warning on the new manager's first day of work was a crowning indignity for plaintiff to have to endure. Defendant has produced no satisfactory explanation for the pattern of blatant insensitivity displayed toward its one black managerial employee in the Northeast region. Taken as a whole, the Court is forced to conclude that a discriminatory purpose was more likely than not involved in defendant's decision to demote.

■ Once discrimination has been found, defendant can prevail only if it proves by clear and convincing evidence that plaintiff would have been demoted even absent the discriminatory treatment. *Day v. Mathews*, 174 U.S.App.D.C. 231, 530 F.2d 1083, 1085 (D.C.Cir.1976). Since the Court views defendant's proffered business reasons as both unsubstantiated and pretextual, it is obvious that defendant has not met its burden. Plaintiff therefore has established by a preponderance of the evidence that her demotion from the position of Charter/Tour Manager was an act of discrimination done by reason of her race. A violation of Title VII has been shown; plaintiff has also proven a violation of 42 U.S.C. § 1981, *Long v. Ford Motor Co.*, 496 F.2d 500, 505 (6th Cir. 1974); *Sabol v. Snyder*, 524 F.2d 1009, 1012 (10th Cir. 1975), and of the District of Columbia Human Rights Law, *see Newsweek Magazine v. District of Columbia Comm'n on Human Rights*, 376 A.2d 777, 789 (D.C.App.1977).

■ Plaintiff contends that the reasons advanced to account for her demotion are also a pretext for sex discrimination. The Court finds that she has failed to adduce sufficient evidence in support of this claim; indeed there is no evidence that her sex played any role in her demotion. Defendant had and continues to have a clear practice of assigning women managerial responsibilities for charter/tour operations. Females have filled the position of Charter/Tour Manager in Washington, D.C., subsequent to plaintiff's tenure. Although plaintiff alleges her demotion was part of a region-wide reorganization aimed primarily at displacing women, female sales representatives in the Washington, D.C., office were retained beyond April 1978, as were female managers in New York and Philadelphia. The argument that women were systematically mistreated during this reorganization is not convincing. Absent more substantial evidence than plaintiff's subjective assertion of sex discrimination, the Court is unable to find that her demo-

tion was "more likely than not . . . bottomed on impermissible [sexual] considerations." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 580, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957 (1978).

### Relief

Plaintiff has failed to establish her claim for punitive damages but is entitled to other monetary and equitable relief, to wit:

(1) Plaintiff is awarded the sum of $2,500 as compensatory damages for her humiliation and derogatory treatment at the hands of defendant's representatives, pursuant to 42 U.S.C. § 1981, *see Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975);

(2) Plaintiff is awarded back pay representing the difference between her compensation and the rate of compensation paid to the Charter/Tour Manager at Washington, D.C., since her demotion, together with all benefits related to this enhanced compensation;

(3) Plaintiff shall be reinstated to the position of Washington, D.C., Charter/Tour Manager;

(4) Plaintiff is awarded reasonable attorney's fees and costs which counsel should seek by appropriate motion unless, as is preferable, the parties reach mutual agreement on the appropriate sum.

Counsel shall present final judgment within ten days from the date hereof. The injunction issued to preserve the Court's jurisdiction *pendente lite* is dissolved upon entry of final judgment.