**Josephine W. KLAPAC, Appellant,**

v.

**Thomas F. McCORMICK, Public Printer.**

**No. 77–1565.**

United States Court of Appeals,
District of Columbia Circuit.

Argued June 7, 1978.

Decided Jan. 30, 1981.

Mona Lyons, Washington, D. C., with whom Judith L. Lichtman, Washington, D. C., was on the brief, for appellant.

James F. Hibey, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the briefs were filed, John A. Terry and Peter E. George, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before: LEVENTHAL,* ROBINSON and WILKEY, Circuit Judges.

Opinion for the court *per curiam.*

## PER CURIAM:

This appeal rises from an action brought under Title VII of the Civil Rights Act of 1964,[1] as augmented by the Equal Employment Opportunity Act of 1972.[2] Appellant, Josephine W. Klapac, endeavored unsuccessfully to satisfy the District Court that her employer, the Government Printing Office (GPO), had discriminated against her on the basis of her gender. More specifically, appellant asserted that over a period of years she was denied job training and professional responsibilities provided male employees,[3] and thereafter was wrongfully denied promotion to the position of assistant foreman in GPO's offset negative section.[4] The District Court, following a trial de novo, held that appellant had "failed to establish a case of sex discrimination cognizable under Title VII,"[5] and entered judgment for GPO.[6]

Appellant raises two issues on appeal. She first asserts that the District Court improperly allocated the burdens of proof on her claim of disparate treatment.[7] Additionally, she argues that the court's decision was based on an erroneous view of substantive Title VII law because it omitted consideration of whether GPO's promotional policies, though neutral in appearance, were shaped by a history of bias in the treatment of women, and were therefore discriminatory in effect.[8] We find both contentions meritless and accordingly affirm.

## I. FACTUAL BACKGROUND

For present purposes, we need recount only the factual highlights. In 1964, appellant commenced work at GPO as a timekeeper. Shortly afterwards, she began to seek opportunities to increase her skills and thereby to move into higher-paying positions. In 1965, she took a qualifying examination required for promotion to the four-year journeyman training program in GPO's offset negative division.[9] Although her score on the examination placed her in the highest grade group, she was not admitted to the program. When she subsequently discovered that two men with lower examination scores had been accepted, she asked for an explanation of her rejection

---

* *Circuit Judge* Leventhal participated in the consideration of this case but died before the decision and judgment were announced.

1. Pub.L.No.88–352, tit. VII, 78 Stat. 253 (1964), as amended, 42 U.S.C. §§ 2000e *et seq.* (1976).

2. Pub.L.No.92–261, 86 Stat. 103 (1972), as amended, 42 U.S.C. §§ 2000e *et seq.* (1976).

3. Complaint ¶¶ 2, 7–12, Joint Appendix (J.App.) ¶¶ 1, 3–5.

4. Complaint ¶¶ 13–16, J.App. 5–6. Appellant sought, *inter alia,* backpay and placement in a priority position for promotion to assistant

foreman in a similar craft area. Complaint (prayer for relief) ¶¶ 4–5, J.App. 12.

5. *Klapac v. McCormick,* No.74–1420 (D.D.C. Apr. 22, 1977) (memorandum opinion), at 7–8, J.App. 25–26.

6. *Id.* (order), J.App. 27.

7. Brief for Appellant at 29–31.

8. *Id.* at 31–36.

9. *Klapac v. McCormick, supra* note 5, at 2, J.App. 20.

and was told that the examination was only one factor considered in the selection process.[10] Appellant then attended a printing school to improve her qualifications for the program. Following completion of her course she retook the qualifying examination, was finally enrolled in the journeyman training program, and achieved journeyman status in 1970.[11]

Appellant asserts that after she attained that status, she was denied lower-level supervisory positions—a virtual prerequisite to further promotion [12]—and was accorded on-the-job supervisory training only after repeated requests.[13] And when appellant asked to be considered for any open supervisory job, the next two vacancies in her section, stripper in charge and assistant foreman—the latter being the position at issue in this suit—were filled by other employees.[14]

The selection process for the assistant foremanship commenced with an identification of all qualified applicants, followed by nomination of the five "best qualified" candidates. These names, together with instructions for selection and summaries of the applicants' personnel folders, were sent to the official in charge of promotions in the offset negative section, and he in turn asked the section foreman for his recommendation. Though appellant was one of the five best qualified applicants, the candidate recommended and ultimately promoted to the position, was a male.[15] Upon learn-

ing of the decision and after exhausting administrative remedies, appellant brought the suit at hand.

## II. BURDENS OF PROOF, AND OPPORTUNITY TO DEMONSTRATE PRETEXT

Appellant contends that the District Court did not utilize the three-step burden-of-proof allocation prescribed by the Supreme Court in *McDonnell Douglas Corp. v. Green.*[16] The Court there held that in a disparate-treatment Title VII suit the initial burden is upon the complaining employee to make out a prima facie case of discrimination.[17] If that showing is made, the employer must establish some legitimate, nondiscriminatory reason for his treatment of the employee.[18] Thereafter, the employee must be given an opportunity to demonstrate that the employer's stated reason is in fact a pretext for discrimination.[19]

In the case at bar, it is arguable that the District Court did not engage in the third phase of the legal analysis demanded by *McDonnell Douglas.* When appellant showed that she was one of five persons recommended for the open assistant-foreman position and that one of the male candidates was selected instead, the District Court correctly acknowledged that she had erected a prima facie case of discrimination:

> Well, I think, she has made a prima facie case . . . it sounds like to me if there is

10. *Id.* See also J.App. 309.

11. *Klapac v. McCormick, supra* note 5, at 3, J.App. 21.

12. See note 31 *infra* and accompanying text.

13. Complaint, ¶¶ 10–12, J.App. 4–5.

14. *Klapac v. McCormick, supra* note 5, at 3–5, J.App. 21–23.

15. *Id.* at 4–5, J.App. 22–23.

16. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See also *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

17. 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677.

18. *Id.*

19. *Id.* at 804–805, 93 S.Ct. at 1825, 36 L.Ed.2d at 679. Although *McDonnell Douglas* involved a private-sector employee whose claim was based on racial discrimination, we have held its burden-of-proof allocation applicable to suits involving federal employees. See *Chalk v. Secretary of Labor,* 184 U.S.App.D.C. 189, 191, 565 F.2d 764, 766 (1977), *cert. denied,* 435 U.S. 945, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978); *Hackley v. Roudebush,* 171 U.S.App.D.C. 376, 425–426, 520 F.2d 108, 157–158 (1975). See also *Adams v. Reed,* 567 F.2d 1283, 1285 n.5 (5th Cir. 1978), (*McDonnell Douglas* applied to federal employee alleging sex discrimination).

an explanation, we ought to hear it. It seems to me that the burden of coming to court with an explanation is now on [GPO], in that context.[20]

The court then proceeded to find that GPO had offered a legally acceptable reason for appellant's nonpromotion: the successful applicant for the assistant foremanship "was selected because, on the basis of ability and experience, he was the best qualified of the five candidates, including" appellant.[21] The court thus concluded that GPO

> has shown by clear and convincing evidence that [appellant's] qualifications were such that she would not in any event have been selected and that the failure to promote [her] to Assistant Foreman was not discriminatory conduct in violation of Title VII. [Appellant] was not deprived of advancement opportunities on the basis of her sex in violation of any Equal Employment or Merit Promotion programs.[22]

The first two steps of the *McDonnell Douglas* approach thus were complied with. Appellant contends, however, that the District Court failed to complete the *McDonnell Douglas* analysis because it did not consider whether her evidence demonstrated that the nondiscriminatory reason GPO advanced for her nonpromotion was a pretext.[23] Indeed, in its opinion the court referred to a *two-step* burden-of-proof standard:

> The plaintiff in a Title VII trial must carry the initial burden under the statute of establishing a *prima facie* case of discrimination. The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employees' rejection.[24]

Without a doubt, this description of the court's understanding of the changing burden of proof omits the complaining employee's prerogative to undertake a rebuttal of the employer's proffered reason for nonpromotion.

We conclude, nevertheless, that appellant's point is not well taken. Subsequent to briefing and oral argument in this case, the Supreme Court, in *New York Transit Authority v. Beazer*,[25] held that an explicit finding on pretext is not necessary when the court has already determined that there was no intent to discriminate. Said the Court, "[t]he District Court's express finding that the [challenged action] was not motivated by [forbidden] animus *forecloses any claim in rebuttal that it was merely a pretext for intentional discrimination.*"[26] While the District Court here made no explicit finding on the employer's intent, it did conclude that GPO preferred appellant's male competitor because "he was the best qualified of the five candidates,"[27] and cor-

---

**20.** Trial Transcript (Tr.) 122, J.App. 148.

**21.** *Klapac v. McCormick, supra* note 5, at 5, J.App. 23. The prevailing candidate "had held at least two supervisory level positions prior to the ... promotion ...;" he had "been employed at [GPO] ... over five years prior to [appellant's] employment. After becoming a journeyman stripper, he [had been] promoted to Training Representative and Stripper-in-Charge," and had "also taken outside courses related to his work and ... worked in outside printing shops"; he had "performed his duties at all times in an above average manner"; he had "applied himself, was production minded, ... related well with fellow employees"; and "he was able to perform 'hot jobs' timely and accurately." *Id.* at 5–6, J.App. 23–24. Contrastingly, the court found that appellant "performed in an average manner, ... was somewhat slow in her work and kept to herself." *Id.* at 6, J.App. 24. We note also that in making these inquiries, the court correctly sought to determine what actually motivated GPO to make its selection.

**22.** *Id.* at 7, J.App. 25.

**23.** See text *supra* at note 19.

**24.** *Klapac v. McCormick, supra* note 5, at 8, J.App. 26, citing *Hackley v. Roudebush, supra* note 19.

**25.** 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979).

**26.** *Id.* at 587, 99 S.Ct. at 1366, 59 L.Ed.2d at 603–604 (emphasis added). *Cf. Garner v. Giarrusso*, 571 F.2d 1330, 1335 (5th Cir. 1978) (unnecessary for trial court to cite *McDonnell Douglas* as long as it applies proper analysis).

**27.** See text *supra* at note 21.

relatively it also concluded that "the failure to promote plaintiff ... was not discriminatory."[28] In light of *Beazer*, these findings must be seen as establishing more than just that the employee's prima facie case has been rebutted; by finding GPO's actions to be nondiscriminatory, the court necessarily determined that the government's proferred justification was not pretextual.[29] While it may remain the better course for trial courts to discuss pretext specifically, the failure to do so cannot in this case be considered error.

### III. THE EFFECT OF PAST DISCRIMINATION

■ In the second prong of her appeal, appellant argues that in light of *Griggs v. Duke Power Co.*[30] GPO's insistence on prior supervisory experience as a prerequisite to promotion in the offset negative section[31] was unlawful because of its adverse effect on the advancement of female employees. Under *Griggs*, an employer's hiring or promotional practice is illegal if—though facially neutral and not intentionally discriminatory—it disadvantages members of a class protected by Title VII.[32] A criterion operating to exclude a disproportionate percentage of protected applicants or employees from admission to or advancement in the employer's workforce can be validated only by showing that it is required by a legitimate business necessity.[33]

Appellant claims that even if supervisory experience is related in that sense to the position of assistant foreman in the offset negative section, GPO is precluded from denying her a promotion for lack of such experience because it was GPO's past discriminatory practice which deprived her of supervisory training. She asserts, then, that a finding that her competitor was better qualified[34] was legally foreclosed because that determination necessarily relied on an impermissible factor—her lack of supervisory experience. The District Court disposed of this contention merely by observing that "[t]he Act does not command that any person be hired or promoted simply because he or she was formerly the

---

**28.** *Klapac v. McCormick, supra* note 5, at 7, J.App. 25.

**29.** We cannot assume, as appellant suggests, that the District Court "neglected to determine" whether GPO's proffered reason for declining to promote appellant was simply a pretext for forbidden discrimination. Brief for Appellant at 29. Although it is true that the court made no express finding on the question, the issue of pretext was fully argued before the court by both parties. See, *e. g.,* Tr. 125–135, J.App. 280–290 (appellant's counsel); Tr. 136–145, J.App. 291–300 (GPO's counsel). On appeal, absent a compelling showing to the contrary, we will presume that the trial court considered and determined all substantial issues fairly presented to it. *Cf. Berenter v. Staggers,* 124 U.S.App.D.C. 141, 142 n.2, 362 F.2d 971, 972 n.2 (1966) ("[c]ertainly error is not to be presumed but must be made affirmatively to appear by the party asserting it").

**30.** 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

**31.** The evidence establishes this precondition beyond peradventure. Tr. 5–6, J.App. 160–161 (testimony of Gary L. Grigsby); Tr. 25, J.App. 180 (testimony of Charles R. Williams, Jr.); Tr.

67, 69, J.App. 222, 224 (testimony of Herman Kilgor).

**32.** *Griggs v. Duke Power Co., supra* note 30, 401 U.S. at 430, 91 S.Ct. at 853, 28 L.Ed.2d at 163.

**33.** "The [Civil Rights] Act proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation. The touchstone is business necessity. If an employment practice which operates to exclude [minority employees] cannot be shown to be related to job performance, the practice is prohibited." *Id.* at 431, 91 S.Ct. at 853, 28 L.Ed.2d at 164. Accord, *Chalk v. Secretary of Labor, supra* note 19, 184 U.S.App.D.C. at 192 n.2, 565 F.2d at 767 n.2; *Castro v. Beecher,* 459 F.2d 725, 732 (1st Cir. 1972); *Robinson v. Lorillard Corp.,* 444 F.2d 791, 797–799 (4th Cir.); *cert. dismissed,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971); *United States v. Georgia Power Co.,* 474 F.2d 906, 911 (5th Cir. 1973); *Head v. Timken Roller ·Bearing Co.,* 486 F.2d 870, 879 (6th Cir. 1973); *Green v. Missouri P. R. R. Co.,* 523 F.2d 1290, 1293 (8th Cir. 1975); *Jones v. Lee Way Motor Freight,* 431 F.2d 245, 249 (10th Cir. 1970), *cert. denied,* 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 (1971).

**34.** See note 21 *supra* and accompanying text.

subject of discrimination."[35] The court therefore made no finding as to whether GPO had actually discriminated against appellant in the years preceding this lawsuit.[36]

Once again, we believe appellant is unable to benefit from the body of doctrine she invokes. For while she offers persuasive evidence that female employees were mistreated by GPO,[37] most of the events labeled as discriminatory transpired before Congress, by the Equal Employment Opportunity Act of 1972,[38] extended to federal servants the protections against employment discrimination previously granted to workers in the private sector. Antedating this legislation were her efforts from 1964 to 1966 to gain admission to printing school and the journeyman-training program,[39] her unfruitful attempts from 1966 to 1971 to obtain on-the-job supervisory training,[40] and her unsuccessful bid in 1971 for an upgraded position on her night shift.[41] Indeed, appellant's only explicit claim of discrimination after passage of the 1972 Act involves GPO's refusal to award her the assistant foremanship.[42]

The 1972 Act applies retrospectively only to proceedings pending on its effective date.[43] Since appellant did not initiate her administrative complaint of sex discrimination until 1974,[44] then, she cannot attribute her post-Act woes to pre-Act grievances.[45]

---

**35.** *Klapac v. McCormick, supra* note 5, at 8, J.App. 26.

**36.** The District Court found that appellant "received on-the-floor supervisory training in 1970 and completed GPO supervisory development training in 1971...." *Id.* at 3, J.App. 21. This finding does not address appellant's present contention—that she was not given any lower-level *supervisory position*, such as training representative. Such a position is not a promotion in terms of pay or job-grade, but is generally regarded as a precondition to further promotion. J.App. 232. See also note 31 *supra*.

**37.** Tr. 98–99, 100–103, J.App. 124–125, 126, 129 (testimony of John J. Boyle); Tr. 73, J.App. 99 (testimony of Katherine Klos). As the District Court found,

[a]t the time of the trial, the GPO had a total of 7,857 employees, of whom 1,888 or 24% were females, and only one of 200 supervisory positions in the Production Department was occupied by a female. In addition, women are under-represented in the higher paying jobs in the agency. The figures as of May, 1972, show 85% of the female craft personnel at GPO earning less than $9,000 per year as compared with 30% of the men, and less than 3% of the total female employees are classified at level GG–11 or above compared with 25% of the men.

*Klapac v. McCormick, supra* note 5, at 6–7, J.App. 24–25. Furthermore, evidence submitted at trial indicated that appellant was required to take printing courses at her own expense in order to qualify for admission to the journeyman-training program though no such requirement was imposed on male employees, Tr. 23, J.App. 48; that unlike her male counterparts she was required to perform secretarial duties during her training, Tr. 28–29, 50, J.App. 53–54, 75; and that she was denied training in certain skills, Tr. 25, 27, J.App. 50, 52, as well as supervisory training and lower-level supervisory experience after she attained journeyman status. Tr. 29–32, J.App. 54–57.

**38.** Pub.L.No.92–261, 86 Stat. 103 (1972), as amended, 42 U.S.C. §§ 2000e *et seq.* (1976).

**39.** Complaint ¶¶ 6–9, J.App. 3–4.

**40.** Complaint ¶ 11, J.App. 5.

**41.** Complaint ¶ 10, J.App. 4.

**42.** Complaint ¶¶ 13–16, J.App. 5–7. Appellant makes no other express claim of post-Act discrimination, though one of her allegations can be read as suggesting that she was discriminatorily denied supervisory training in her section for six months after the Act went into effect. Complaint ¶ 11, J.App. 5. Appellant would not prevail, however, even if her complaint were accorded such an interpretation. That aspect of the complaint has no relevance to the supervisory qualifications deemed crucial by the District Court, see note 21 *supra* and accompanying text; indeed, the court found that appellant's "qualifications were such that she would not in any event have been selected." *Klapac v. McCormick, supra* note 5, at 7, J.App. 25.

**43.** *Hackley v. Roudebush, supra* note 19, 171 U.S.App.D.C. at 380 n.4, 520 F.2d at 112 n.4; *Grubbs v. Butz,* 169 U.S.App.D.C. 82, 86, 514 F.2d 1323, 1327 (1975); *Womack v. Lynn,* 164 U.S.App.D.C. 198, 504 F.2d 267 (1974).

**44.** Complaint ¶ 20, J.App. 8.

**45.** See *United Air Lines v. Evans,* 431 U.S. 553, 557–560, 97 S.Ct. 1885, 1888–1890, 52 L.Ed.2d 571, 577–578 (1977); *Stovall v. St. Louis Bd. of Educ.,* 614 F.2d 619, 621–622 (8th Cir. 1980); *Farris v. Board of Educ.,* 576 F.2d 765 (8th Cir. 1978). *Cf. International Bhd. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52

This is not to say, of course, that a pattern of pre-Act discrimination can have no legal effect: it may, for example, be highly probative of an employer's intent to discriminate; [46] or it may, in a disparate-impact case, help explain why a given hiring criterion—such as a requirement of supervisory experience—has a discriminatory effect on a protected group.[47] But neither of these avenues to relief is open to appellant, for, as we have seen, the District Court implicitly found both that GPO had no discriminatory purpose,[48] and that its preference for candidates with supervisory experience was business-related.[49] And on the record before us appellant's failure to attain the assistant foremanship does not, standing alone, warrant relief: as the Court observed in *Griggs*—and as the District Court noted as well[50]—"the Act does not command that any person be hired simply because he was formerly the subject of discrimination."[51]

Because appellant's substantive and procedural arguments both fail, the judgment appealed from is affirmed.

*So Ordered.*

---

L.Ed.2d 396 (1977). See also Comment, *Past Discrimination and Present Violations of Title VII*, 92 Harv.L.Rev. 757 (1979).

**46.** *McDonnell Douglas Corp. v. Green, supra* note 16, 411 U.S. at 805, 93 S.Ct. at 1825, 36 L.Ed.2d at 679.

**47.** See *Griggs v. Duke Power Co., supra* note 30, 401 U.S. at 430, 91 S.Ct. at 853, 28 L.Ed.2d at 163.

**48.** See notes 26–29 and notes 27–29 *supra* and accompanying text.

**49.** The court concluded that appellant's competitor had superior qualifications. See note 21 *supra* and accompanying text.

**50.** See text *supra* at note 35.

**51.** *Griggs v. Duke Power Co., supra* note 30, 401 U.S. at 430–431, 91 S.Ct. at 853, 28 L.Ed.2d at 164.