Charles M. McCURDY, Plaintiff,

v.

**SCHOOL BOARD OF PALM BEACH COUNTY, FLORIDA, et al., Defendants.**

No. 73-77-Civ-NCR.

United States District Court,
S. D. Florida,
West Palm Beach Division.

Oct. 24, 1973.

William M. Holland, Holland & Smith, West Palm Beach, Fla., for plaintiff.

James M. Gann, Jackson & Jackson, Palm Beach, Fla., for defendants.

## FINDINGS OF FACT

ROETTGER, District Judge.

Plaintiff is a black principal who seeks a preliminary injunction compelling his employment as Supervising Principal of Glades Central High School, Belle Glade, Florida, together with back pay and attorneys' fees. Plaintiff presented his case and was willing for the court to consider the matter on the merits, pursuant to Rule 65. Defendant insisted it had additional witnesses to present on the issue of a permanent injunction; consequently, these Findings of Fact and Conclusions of Law deal with the issue of Preliminary Injunction only.

Plaintiff is a 59-year-old black educator who came to Palm Beach County in 1944 to become a principal at Belle Glade Elementary School. In 1949 the school was renamed as Lakeshore Elementary School. In 1955 plaintiff transferred to Lakeshore Junior-Senior High as principal and this is his twenty-ninth year as a principal in the Palm Beach County schools.

Plaintiff McCurdy holds a Master's Degree in administration and supervision and has a valid certificate in administration and supervision for elementary grades through the twelfth grade; his certificate is valid to 1981. He presently is the principal of Lakeshore Junior High.

In August 1970, the defendant attempted to comply with an order of Judge Eaton of this court in an effort to achieve a unitary school system and consolidated Lakeshore Senior High and Belle Glade High into one high school. The white principal of Belle Glade High School, a predominately white high school of 564 students in grades ten through twelve, had resigned in June 1970. The student body of Lakeshore Junior-Senior High comprised 1380 students, all of whom were black except for 30 students; the school had vocational courses in addition to the usual curriculum and was under the direction of plaintiff, as principal.

In September 1970, defendant, without discussing the principalship with plaintiff, named Martin Gold, a white assistant principal elsewhere in the county, to be the supervising principal (hereafter called "principal") of Glades Central High School and plaintiff was named as building principal of the South Campus of the consolidated complex. This basically made him principal over the ninth and tenth grades.

Later in 1970 plaintiff brought suit in this district against defendant alleging a violation of his civil rights because he had not been named as principal of Glades Central High School. On May 29, 1971, a stipulation for dismissal was entered into between plaintiff's previous counsel and counsel for the School Board. The only apparent consideration flowing from the School Board, other than the bearing of minimal court costs, was an agreement "that defendants agree not to discriminate against plaintiff." In view of the court's subsequent conclusions, it is unnecessary to comment on the inadequacy of consideration which consists of a mere promise to obey the law.

Despite the School Board's promise not to discriminate, less than four weeks later on June 23, 1971, the School Board assigned Roy Carter to replace Gold as principal of Glades Central High School; Gold was transferred to Sun Coast High School in Riviera Beach. Again, the School Board did not offer the Glades Central position to plaintiff or consult

with him about it although there was testimony that he was considered and rejected by the school authorities.

Carter is white and had become principal of the Belle Glade Junior High in January 1971, designated an assistant principal of Glades Central High at the close of the school year but was named as principal of Glades Central High School before serving in that capacity. His previous experience had been as a program specialist in music for Palm Beach County and he had served as a band director.

In the first year following the desegregation order, plaintiff's salary remained the same; that of a principal of a large senior high school. The next year, 1971–1972, he was paid the salary for a small senior high principal with a $292 loss differential. In 1972–1973 he was paid as a principal for a medium junior high school and the negative differential was $1215. In the present school year he again is being paid the salary of a medium junior high school principal at an annual rate of $19,536 whereas the salary for a principal of a large senior high school is $21,670. Despite the reduction in salary and status, defendant contends plaintiff has suffered no demotion. The court expressly finds to the contrary.

Since the dismissal of the first suit there have been seven vacancies in principalships in Palm Beach County high schools in addition to the one filled by Carter at Glades Central High School. One of these vacancies is at Pahokee High School, only eight miles from plaintiff's home and the only other high school in the west end of the county. Plaintiff testified he had expressed interest in high school principalships and that he never received any communication from school authorities about any of the vacancies.

Defendant asserts plaintiff never wrote to apply for any of the vacancies. The court observes that the mailing of a letter requesting consideration for a vacancy is a minor and routine way of expressing interest compared to the meth-od plaintiff had employed previously: that of filing a lawsuit to compel defendant to offer him the principalship at Glades Central High School.

The thrust of the School Board's defense is that because of peculiar circumstances involved in complying with the desegregation order of August 19, 1970, coupled with community reaction in the west end of Palm Beach County, plaintiff was not qualified to be principal of Glades Central High School because of his lack of experience in matters of desegregation.

Palm Beach County is more than twice the size of Rhode Island with most of its 350,000 residents clustered along the Atlantic coastline. In the west end of the county are the communities of Belle Glade, Pahokee and the farming areas at the edge of Lake Okeechobee. Only two high schools now serve the west end of the county, Glades Central and Pahokee, and each is 40-plus miles from the nearest high school at West Palm Beach. Glades Central is the only high school in the county which is predominantly black. The demography of the west area reveals it comprises 68% blacks, 9% Spanish-speaking and 23% white or "Anglo"; 35 to 50% of the school population are children of migrant farm workers.

Subsequent to the desegregation order there was an extensive boycott by students, primarily black students at Lakeshore who did not wish to integrate with the predominantly white Belle Glade High School. There were vocal militant groups in both the black and white communities and the School Board considered the situation in the west area as rather explosive; indeed, it did prove necessary to station armed policemen on the school campuses on several occasions in the 1970–1971 and the 1971–1972 school years.

Mr. Maynor, the west area school superintendent for more than four years, impressed the court as a very candid witness and a knowledgeable school man. He testified that the school authorities in Palm Beach County felt a skilled ad-

ministrator was needed to cope with the volatile situation in Belle Glade and their criteria—not promulgated by the School Board before the filing of the instant lawsuit—was that the principal should be experienced in both desegregation and integration and have strength in curriculum, particularly because there existed an appalling ratio of 3 non-readers to 1 reader among the 9,000 students in the west area. He testified this criteria was established "in discussions" prior to the appointment of Gold, and that the criteria was followed with respect to his appointment and for Carter's as well.

Maynor testified that plaintiff was considered and rejected because of a number of factors: his custodial employee turnover was five times that of other principals; his teacher turnover was considerably more than that of other principals; it was felt plaintiff could not handle students because he did not control them during the boycott; plaintiff did not maintain an open-door policy for student complaints and, additionally on this theme, he did not have a listed phone; there had been an excessive loss of equipment at Lakeshore Junior High (although Mr. Maynor volunteered that location affects the loss rate); the plaintiff had not had desegregation experience; and that plaintiff was rated only as an average principal.

The School Board's urging that plaintiff had less desegregation experience does not wash. Prior to 1970, there were only 331 black students in the predominantly white high schools of Palm Beach County, nearly all of them at Palm Beach High and Sun Coast High in Riviera Beach. It would strain credulity to conclude that the incumbent at Glades Central High School could be more experienced than plaintiff in handling desegregation problems because of his experience as a band director—in schools that were obviously almost totally segregated prior to 1970—plus what he gained in less than six months' service as principal of Belle Glade Junior High School.

Maynor evaluated plaintiff as a principal in March 1971 (just before Carter was hired) and in April 1973. These ratings (see defendant's exhibit #2) show that on a scale ranging from 5 for outstanding down to 1 for unsatisfactory, plaintiff was never marked as unsatisfactory in any classification or category. Most of his marks in both evaluations were at 3, or satisfactory. None in 1973 were lower than 3 and only two minor matters in 1972 were marked as low as 2 ("needs improvement") and there were several categories marked 4 ("above average").

The burden placed on a School Board to show how a principal of some years standing can suddenly become unqualified following a desegregation order is a difficult one. The circumstances in this case are far less excusable than they were in Lee v. Macon County, 453 F.2d 1104 at 1110 (5th Cir. 1971), because this plaintiff had been a principal for 27 years at the time of hiring Carter, not a mere 8 years as in *Lee;* plus, immediately prior to the desegregation order the School Board found plaintiff qualified enough to have him serve as a principal of a combined Junior and Senior High School with an enrollment of nearly 1,400 students. The evidence presented at this hearing falls pitifully short of showing plaintiff to be unqualified for the principalship of Glades Central High School at the time Mr. Carter was appointed to fill the vacancy.

The court observes in the pleadings that defendant in its Memorandum of Law supporting its Motion to Dismiss states that: "Only after must (sic) research, review and conferences with the Personnel Director and West Area Assistant Superintendent was plaintiff determined to be *less qualified* for the position of Supervising Principal than other *more qualified* persons." (Emphasis supplied.) Additionally, when Maynor was asked if McCurdy was unqualified for the job when Carter was selected he candidly replied: "Not as qualified as the others" and that Carter was "best suited for the job." It is plain that the

School Board has " . . . let the cat out of the *Singleton* bag." Lee v. Macon County, *supra* at 1111.

To summarize in baseball parlance: the School Board recognized plaintiff as a veteran player and a starting player but the school authorities felt a clean-up hitter was required at Glades Central High School and didn't want him batting clean-up.

## CONCLUSIONS OF LAW

■ The court is loathe to invade the judgment areas of the School Board in its administration of Palm Beach County schools. It may well have been justified in feeling from a management point of view that a specially qualified principal was needed at Glades Central at that point in time. However, the requirements under Singleton v. Jackson, 419 F.2d 1211 (5th Cir. 1970) and Lee v. Macon County, *supra*, are clear and compelling and the School Board has failed to show plaintiff is unqualified to serve as principal at Glades Central High School or at the other seven high schools where there have been vacancies for the position of principal. Since the stipulation of May 29, 1971, at which time defendant assured plaintiff that "defendants agree not to discriminate against plaintiff", plaintiff's constitutional rights within the meaning of *Singleton* and *Lee* have been clearly violated.

■ Whether plaintiff has shown entitlement to a preliminary injunction depends on whether he has shown entitlement under the four tests recently set forth in Blackshear Residents v. Romney, 472 F.2d 1197 (5th Cir. 1973), namely: (1) whether the plaintiff is likely to prevail on the merits; (2) whether the plaintiff is in danger of suffering irreparable harm; (3) whether the potential harm to the defendant from issuance of the injunction outweighs the possible harm to the plaintiff if injunctive relief is denied; (4) whether issuance of a preliminary injunction will serve the public interest. *Id.* at 1198.

The court finds there is a strong likelihood plaintiff will prevail on the merits. Secondly, the court finds plaintiff is suffering irreparable harm simply because of discrimination shown to have been practiced against him with the resultant denial of his constitutional rights. Thirdly, the court finds the potential harm to defendant from issuance of the injunction does not outweigh the possible harm to plaintiff if the court denied the preliminary injunction.

The last test is disturbing to the court. The court concludes that the School Board is not acting in bad faith or maliciously in denying the principalship at Glades Central on two occasions to plaintiff. The court feels the School Board is acting in a well-intentioned effort and out of a sense of responsibility that Glades Central High School needs the best qualified school administrator for the job. By their ratings of plaintiff, defendant plainly does not feel he is the best qualified educator but is an average to above-average principal. Even if the court accepts those ratings as true, that does not amount to "unqualified" as required by Lee v. Macon County, *supra* and Singleton v. Jackson, *supra*.

■ The removal of a school head in the middle of his third year by court order could have an adverse effect upon those persons who are the sole reason for the existence of the school system in the first place: the students. However, under the rationale of recent cases such as Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969) and United States v. Texas Education Agency, 467 F.2d 848, 890 (5th Cir. 1972) (Special opinion by Chief Judge Brown), this court feels that immediate issuance of a preliminary injunction is both warranted and compelled. Further, the elimination of such blatant discrimination against plaintiff serves the public interest to a degree sufficient to satisfy the fourth requirement for the issuance of a preliminary injunction. Therefore, the courts finds that plaintiff is entitled to

immediate issuance of a preliminary injunction requiring the School Board to install him as principal of Glades Central High School.

 It would be unfair for the incumbent principal to suffer financially as a result of the issuance of this injunction and the School Board is enjoined to maintain his rate of pay and, if possible, to offer him the first available principalship in Palm Beach County or to provide him as soon as possible with a comparable position so that he will suffer no demotion.

At the conclusion of the hearing, when the court announced its intention to issue a preliminary injunction, plaintiff graciously agreed to provide a 7-day stay from the effect of this injunction to permit the School Board to file an appeal and to waive the filing of an appeal bond as well. All other matters such as back pay, attorneys' fees, etc. shall await the hearing on the merits. It is emphasized that this is only a preliminary injunction and it may or may not be made permanent depending on the evidence presented at the final hearing.

The preliminary injunction is entered to supplement that preliminary injunction announced at the close of the court's hearing on October 10, 1973, and entered nunc pro tunc.