**Charles M. McCURDY, Plaintiff,**

**v.**

**BOARD OF PUBLIC INSTRUCTION OF PALM BEACH COUNTY, FLORIDA, et al., Defendants.**

**No. 73-77-Civ-NCR.**

United States District Court,
S. D. Florida,
West Palm Beach Division.

May 31, 1974.

Amended June 11, 1974.

---

**600**

William M. Holland, Holland & Smith, West Palm Beach, Fla., for plaintiff.

James M. Gann, Jackson & Jackson, Palm Beach, Fla., for defendants.

## PERMANENT INJUNCTION

ROETTGER, District Judge.

The court entered a preliminary injunction in favor of the plaintiff, a black school principal, on his claim he was unconstitutionally deprived of the right to be the principal at Glades Central High School. 367 F.Supp. 747 (S.D.Fla. 1973). Although the Fifth Circuit had not disposed of the School Board's appeal from the preliminary injunction, the court set this matter down for final hearing because of the imminence of the 1974–1975 school year and in fairness to plaintiff, the school administrators, the incumbent principal, the teachers and students of the schools involved, and the Court of Appeal. DiGiorgio v. Causey, 488 F.2d 527, 528 (5th Cir. 1973).

### FINDINGS OF FACT

The court adopts the findings of fact previously set forth in its preliminary injunction and supplements them with the following findings.

The various school administrators called by defendant testified to a pattern of complexity involved in administering integrated schools in Palm Beach County. The witnesses were unanimous that administering a unitary school is more difficult than being the head of an all-black or all-white school. In addition, the difficulties increase as the students get older. This is borne out by the fact that of the twelve senior high school principals in Palm Beach County ten have left for various reasons since the unitary school system was implemented pursuant to an order of Judge Eaton of this court in August, 1970. In that same period of time the turnover has only been 50% for middle school principals and 29% for elementary school principals. The evidence showed an additional pattern of older school administrators being

replaced by younger administrators who seem to be able to cope with the problems more effectively than their older counterparts.

The county superintendent testified, and the court so finds, that the Lakeshore Junior High School principalship is more difficult than it was for plaintiff to be principal of the all-black Lakeshore Junior-Senior High School four years ago.

In the plaintiff's twenty-ninth year as school principal in this system—the longest tenure of any school principal in the county—the annual evaluation by the area superintendent conducted in April of this year now judges him to be "unsatisfactory." Only last year on a scale of 1 to 5, with 1 being unsatisfactory, plaintiff was rated at slightly above 3— or satisfactory plus. This new rating of unsatisfactory was based upon the judgment that plaintiff is deficient in a number or matters such as program planning, program implementation and follow through, and that there was not sufficient improvement in these areas over the previous evaluation. In addition, he was thought to be unsatisfactorily deficient in utilization of staff, the lack of student control and scheduling, and because of a number of disruptive students—described as "most insulting in the area." Additionally, he was criticized for failing to utilize his plant by using portable classrooms, which were in short supply throughout the system, at the same time he had two or three empty classrooms. Further, he is charged with reporting forty racial incidents to the area superintendent while the next highest school, Pahokee Junior High, only had ten in the same period of time. Plaintiff explained away some of the criticisms such as plant utilization and utilization of staff. In addition, the court finds there seems to be some confusion in the definition of just what constitutes a reportable racial incident.

Plaintiff is a diabetic who goes home each day for a special-diet lunch. His home is about 3 to 5 minutes away from the school and he normally takes about an hour for lunch. The area superintendent acknowledged that principals are not obligated to stay at school during the lunch hour. However, it seems somewhat incongruous that plaintiff requires his own teachers to remain at school during their 25-minute lunch period.

The county superintendent, Dr. Carroll, has occupied this position since January, 1973. The school system comprises 70,000 students and 6,000 employees of whom 1,800 are teachers. In defendant's system one area superintendent is black and two principals are black. Dr. Carroll has implemented a number of management techniques and he feels they support the area superintendent's appraisal of the plaintiff as unsatisfactory—a rating concurred in by all of the defendant's witnesses.

One of the tools used by the School Board is a teacher questionnaire and in 74 of the 84 schools over 80% of the teachers responded. There were only two schools in the county with lower than a 60% response rate and the lowest was a 42% response rate at Lakeshore Junior High School, where plaintiff is principal. The county superintendent feels that a low response rate results either from a "fear syndrome" among the faculty or the matter was not properly administered by the principal.

The profile from the teachers' responses indicates in some critical areas that Lakeshore Junior High compares very unfavorably with other Junior High Schools in the county. For example, of the sixteen middle schools it ties for thirteenth in the area of the administration giving good support to the teachers; it ties for fourteenth in the area of program planning; it ranks fifteenth in the area of assistance in improving instruction; it ranks sixteenth in the area of working relationship with principal and ranks in a tie for the last place in freedom in expressing opinions. The court required the School Board to provide the court after the hearing with a listing of the high schools which ranked as low

or lower in these specific statistical categories.

The court also required that if any school appeared below Lakeshore Junior High in more than one column the court be furnished with the evaluation reports made on that school's principal both in 1973 and 1974. Curiously, there was a school which managed to rank below Lakeshore Junior High in three categories. It gets "curiouser and curiouser": that school's principal was not rated unsatisfactory in 1974; further, in 1973 that principal, who is white, received nothing but 5's and 4's—outstanding and above average—in the evaluation. The court must observe that the disparities in these ratings underscore plaintiff's claim of discrimination.

An examination of the entire statistical profile reveals that there are several other areas in which Lakeshore Junior High does not rank so poorly, especially when one compares the student responses and the parent responses. Both of those responses rank Lakeshore Junior High very high among the middle schools of Palm Beach County.

The testimony of several present and former teachers who served under plaintiff's direction indicates he has generated both loyalty and respect in the minds of these teachers and others who have worked with him.

Teacher retention seems to be a particularly difficult matter in the Glades area of the county; expectably, there is a greater turnover there than in the coastal areas. It is understandable as the testimony revealed 126 teachers drive into Belle Glade and Pahokee daily from the coastal areas over 40 miles away. As can be expected, many of them desire transfers in order to eliminate such a lengthy commuting distance. Even with that fact in mind it is distressing to find that the teacher turnover under plaintiff at Lakeshore Junior-Senior High School for ten years prior to 1970 was greater than for any other school in the county, and that there has been a substantially greater turnover at Lakeshore Junior High than at any other school of similar size since 1970. This fact, coupled with the teachers' responses from the questionaire, does give rise to negative expectations about plaintiff's ability to perform as principal in an efficient manner.

Defendants have asserted that plaintiff lacked sufficient background in inter-racial matters to be principal of Glades Central High School. That contention lacks substance in view of plaintiff's serving as President of the Belle Glades Biracial Council, President of the Palm Beach County Principals organization and the fact that in the 1974 evaluation of plaintiff by the area superintendent there is only one "strength" listed and that is "Human Relations within the Community."

The School Board attempts to explain the sudden rating of plaintiff as unsatisfactory on the basis that there was very little management information available prior to 1973 and that the county superintendent has stressed evaluation of teachers and principals. For example, in the 1973 evaluation form not one of the 1,800 teachers was rated unsatisfactory although there was one at the central office so rated. Understandably, this result did not seem realistic to the school superintendent. The area superintendent testified that the standards have been tightened steadily since the unitary school system was ordered in 1970.

The court inquired of the various school officials called by defendant to determine what the standards had been for black principals prior to 1970; the responses were fairly unanimous that there was a dual standard with a greater tolerance towards black principals; the county superintendent ventured that black schools were simply ignored unless they gave trouble to school administrators. Whatever the reason, plaintiff had been rated as satisfactory for 28 years as a principal and, after the issuance of the preliminary injunction against defendant, has now been rated unsatisfactory. That change in rating is, at best, incredible. This court does not find that all of a sudden plaintiff is unsatisfactory

as a school principal and, therefore, unqualified for the principalship of Glades Central High School.

■ In view of the burden placed upon the School Board under Lee v. Macon County, 453 F.2d 1104 (5th Cir. 1971) to show that plaintiff is unqualified the court specifically finds that the School Board has failed to meet this burden. This finding can be made by the court purely on the evidence produced by defendant and is buttressed by the evidence introduced in behalf of plaintiff.

## CONCLUSIONS OF LAW

This case is controlled by Lee v. Macon County, supra, and the cases are amazingly congruent on their facts. As in *Lee*, plaintiff McCurdy lost his principalship as the result of a court desegregation order when two segregated high schools were merged into one high school. Twice since then the School Board has installed a white principal at Glades Central High School, one an assistant principal and the other a music director with one year of experience as an assistant principal in a Junior High School. The only significant difference between the facts in *Lee* and the facts in the instant case is that Charles McCurdy's case is even stronger.

■ Therefore, plaintiff shall be reinstated as a high school principal and installed as principal of Glades Central High School effective July 17, 1974. The parties have stipulated as to the effective date.

■ The parties have also stipulated that the amount of damages from loss of back pay to be awarded plaintiff is Three Thousand Six Hundred Forty-one Dollars ($3,641.00) and judgment is hereby entered in favor of plaintiff in that amount.

Plaintiff is awarded full retirement benefits as if he had been the principal of a large high school for the last four years.

Defendant advised the court that the incumbent principal, on advice of his doctor, has requested and received an assignment for the coming school year in a less demanding position so that portion of the preliminary injunction relating to the incumbent principal is dissolved. In all other respects the preliminary injunction is made permanent and the conclusions of law contained in the preliminary injunction are adopted by the court in this permanent injunction.

Costs and attorneys' fees will be awarded by subsequent order.